UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DAVID TRACY GIRON,                                                                  Case No. 18-13213 t7

    Debtor.

GRETCHEN WELCH,

    Plaintiff,

v.                                                                                                 Adv. No. 19-1008

DAVID TRACY GIRON,

    Defendant.

## **OPINION**

       In this proceeding Plaintiff asks for a declaration that her $20+ million state court judgment against Debtor is nondischargeable. Before the Court is Plaintiff's motion for summary judgment, based entirely on the asserted preclusive effect of the state court judgment. Debtor responded to the motion but did not submit opposing evidence. Having reviewed the motion and Debtor's response, the Court finds that the amount of the state court judgment is entitled to full faith, but that the judgment did not determine the dischargeability of the debt and should not be given issue preclusive effect. The motion therefore must be denied.

                                                                                   I.       FACTS

      For the purpose of ruling on the motion, the Court finds that there is no genuine dispute about the following facts:

        1.       Plaintiff and Debtor live in New Mexico. Debtor is Plaintiff's nephew.

        2.       Debtor entered into an arrangement with Plaintiff whereby Debtor, in exchange for a

fee, helped Plaintiff invest in junior deeds of trust encumbering California houses.

3. Debtor agreed to search out promising investment opportunities, conduct due diligence, obtain title insurance policies, and perform all work needed to acquire and manage the purchased deeds of trust.

4. Debtor also agreed to foreclose the second deeds of trust through non-judicial foreclosure proceedings, if needed.

5. From July through December 2014, Plaintiff bought four second priority deeds of trust, encumbering four California houses. The properties are described below:

| Address | Second Lien Balance | General location |
|---|---|---|
| 3435 Linda Vista | $85,000 | Los Angeles |
| 1229 Bluegrass | $120,000 | Anaheim |
| 11848 Cedarvale | $85,000 | Norwalk |
| 20152 Orchid | $329,700 | Newport Beach |
| Total | $619,700 | |

6. Plaintiff signed the necessary paperwork, which had been prepared by Debtor. The documents were recorded as needed.

7. During 2015, either Debtor or the senior lienholder prepared notices of default and conducted trustee's sales of all four properties. Plaintiff was the successful bidder each time. Debtor's company, County Records Service, Inc. ("CRS"), signed deeds to the four properties to "the Gretchen Welch Family Trust dated 12/5/2007."[1]

8. The Los Angeles property was resold at a loss to Plaintiff.

9. CRS attempted to rescind the conveyance of the Norwalk, Newport Beach, and Anaheim properties in December 2015, asserting that the notices given of the trustee's sales were

---

[1] Plaintiff apparently instructed Debtor to put the properties into her trust.

invalid.

10. According to Debtor, he filed the rescissions because "After she sold [sic] 1st property she said she wouldn't pay me what she promised. I indicated if she would not pay me I would reverse the Trustee's Deed Upon Sale's removing her as the owner and making the original owners back on title."

11. On December 28, 2015, Debtor notified Plaintiff that she no longer owned any of the four properties.

12. Plaintiff sued Debtor in the Superior Court of the State of California, Orange County, commencing case No. 30-2016-00845182, on April 7, 2016. The complaint is not part of the record in this proceeding.

13. On or about March 8, 2018, Plaintiff sought entry of a default judgment against Debtor in the state court action, through a "Plaintiffs' Application to Enter Judgment – CCP § 585(d)."[2] The application included a lengthy affidavit signed by Plaintiff.

14. The Application refers to possible causes of action for breach of contract, fraud and concealment, breach of fiduciary duty, negligence, intentional and negligent infliction of emotional distress, and obtaining title to real property and money by false pretenses.

15. On June 15, 2018, the state court entered a judgment against Debtor for $20,066,676.55. The judgment does not refer to any specific cause of action, does not contain any conclusions of law, and does not incorporate any of the facts alleged in the Application or supporting affidavit. The judgment contains a single finding of fact: "Defendants . . . conducts [sic] were with malice, oppression, or fraud, justifying the award of punitive damages."

---

[2] The statutory reference is to the California Code of Civil Procedure. Section 585 is entitled "Judgment on default."

16. Based on Plaintiff's California affidavit, her investment losses could be as low as about $500,000 or as high as about $1,600,000.³ In addition to out-of-pocket losses, however, the judgment includes a statutory civil penalty of $8,400,000 (for theft and/or receiving stolen property); $4,600,107 of pre-judgment interest (calculated on $15,455,073.80 and accruing from January 2015); $839,300 of attorney fees; $34,000 in travel expenses; $30,000 in medical expenses; $350,000 in emotional distress damages; $650,000 in loss of money and lost profit; $2,956,800 in loss of retirement; $750,000 in the loss of use of money; and $8,500 in punitive damages. There is no supporting evidence in this proceeding's record for any of the damage categories or amounts.

17. The judgment was domesticated in New Mexico on November 16, 2018, on which date the Thirteenth Judicial District Court issued an Order on Foreign Judgment, ordering that the California judgment "be and hereby is recognized as the judgment of this Court and hereof let execution issue."

## II. DISCUSSION

A. <u>Summary Judgment Standards</u>.

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.⁴ "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the

---

³ The Court bases this finding on Plaintiff's California affidavit. It includes losses on her investment, payments to keep the first deeds of trust current, and attorney fees incurred to defend her interests in lien dispute litigation.

⁴ Made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the evidence in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997). "Even if the non-moving party does not file a response, the Court must satisfy itself that the movant's properly supported facts entitle the movant to judgment as a matter of law before the Court will grant summary judgment." *Henderson v. White (In re Henderson)*, 560 B.R. 365, 368 (Bankr. D.N.M. 2016); *see Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

B.  The Nondischargeability Claims.

Plaintiff alleges that Debtor's conduct rendered her $20,872,849.63 judgment against him nondischargeable under § 523(a)(2)(A) (false pretenses, false representations, or actual fraud);[5] § 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny); and/or § 523(a)(6) (willful and malicious injury to person or property). To prevail in this proceeding, Plaintiff must prove that she has a valid claim against Debtor, and that the subject debt is nondischargeable. *In re Crespin*, 551 B.R. 886, 898 (Bankr. D.N.M. 2016).

C.  Plaintiff Established a Valid Debt.

There is no genuine dispute that Debtor owes Plaintiff $20,872,849.63. 28 U.S.C. § 1738 provides in part:

> The records and judicial proceedings of any court of any ... State ..., or copies thereof, shall be proved or admitted in other courts within the United States ... by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States ...

---

[5] Unless otherwise indicated, all statutory references are to 11 U.S.C.

as they have by law or usage in the courts of such State ... from which they are taken.

This "full faith and credit" statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the state courts from which they emerged." *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997).

By first obtaining and then domesticating the California judgment, Plaintiff has established that she has a valid claim against Debtor.

D.  Plaintiff Has Not Established that the Debt is Nondischargeable.

Plaintiff relies on preclusive principles to show that the debt is nondischargeable.[6] The full faith and credit statute is the basis for giving state court judgments preclusive effect in federal courts. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 95 (1980) (citing 28 U.S.C. § 1738, the Supreme Court held that "federal courts generally have also consistently accorded preclusive effect to issues decided by state courts"); *Crocog Co. v. Reeves*, 992 F.2d 267, 269 (10th Cir. 1993) (federal courts are required by 28 U.S.C. § 1738 to give state court judgment the same preclusive effect as would be given that judgment under the law of the state where judgment was rendered); *In re Crespin*, 551 B.R. at 895 (a state court judgment can have a preclusive effect in a later bankruptcy case); *In re Shari Siebel*, 2018 WL 2283835, at *4 (Bankr. D.N.M.) (same).

1.  Other Courts Lack Jurisdiction to Rule on the Dischargeability of Debt. Plaintiff correctly concedes that under *Brown v. Felson*, 442 U.S. 127 (1979), claim preclusion does not apply when "considering the dischargeability of debt." 442 U.S. at 138–39. "The Supreme Court

---

[6] Res judicata encompasses both claim preclusion and issue preclusion. *See In re Crespin*, 551 B.R. at 895, citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Court in *Taylor* went on to say that the terms claim preclusion and issue preclusion "replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" 553 U.S. at 892, n.5.

stressed that the bankruptcy court has exclusive jurisdiction to determine the nature of a debt for dischargeability purposes and concluded that applying res judicata [claim preclusion] to the dischargeability decision would undercut that jurisdiction." *Crespin*, 551 B.R. at 896–97, citing *Brown*, 442 U.S. at 135-36. Plaintiff therefore cannot use claim preclusion principles to establish that her judgment is nondischargeable.

  2. <u>Other Courts May Decide Issues Relevant to Nondischargeability</u>. Although *Brown* holds that a state court judgment cannot be given claim-preclusive effect, the court went on to hold:

> Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit…. If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [§ 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

442 U.S. at 139, n.10. Thus, if the California court made findings relevant to Plaintiff's nondischargeability claims, issue preclusion principles might bar relitigation of those facts.

  When considering whether to preclude relitigation of an issue decided in state court, federal courts must give full faith and credit to the state court judgment by following the preclusion law of the state that rendered the judgment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (10th Cir. B.A.P. 2002).

  The applicable law is either California or New Mexico law. The original judgment was obtained in California, so it would seem logical to apply California law. However, Plaintiff domesticated the judgment in New Mexico, and it is the New Mexico judgment Plaintiff wishes to have declared nondischargeable. Once domesticated in New Mexico, a foreign judgment is entitled to the same enforcement procedures and remedies as a judgment originating in New Mexico. *See National Bank of Arizona v. Moore*, 138 N.M. 496, 500 (2005) (citing and following

-7-
Case 19-01008-t    Doc 19    Filed 12/13/19    Entered 12/13/19 16:11:39 Page 7 of 12

*Huntington National Bank v. Sproul*, 116 N.M. 254 (S. Ct. 1993); *see also* Restatement (Second) of Conflict of Laws § 99 (1971); ("[t]he local law of the forum determines the methods by which a judgment of another state is enforced.").

3. <u>Issue Preclusions and Default Judgments</u>. In general, issue preclusion may be invoked when the issue was actually litigated and necessarily determined in the prior action; the cause of action was different; and the person against whom preclusion is asserted was a party in the prior action. *See The Bank of New York v. Romero*, 382 P.3d 991, 998-99 (N.M. App. 2016); *United States Golf Assn. v. Arroyo Software Corp*, 69 Cal. App. 4th 607, 616 (1999); *In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014).

Neither New Mexico nor Tenth Circuit law gives issue preclusive effect to default judgments. *See Melnor v. Corey (In re Corey)*, 583 F.3d 1249, 1251-52 (10th Cir. 2009); *Blea v. Sandoval*, 107 N.M. 554, 558 (Ct. App. 1988), citing *First State Bank v. Muzio*, 100 N.M. 98 (S. Ct. 1983); *accord* The Restatement (Second) of Judgments § 27, comment e.[7] The reason for the refusal is that the relevant issues were not "actually litigated. *Id.*

On the other hand, California does give issue preclusive effect to default judgments. As stated in *Mitchell v. Jones,* 172 Cal. App. 2d 580 (1959):

> [A] default judgment conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment; but such judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the judgment.

---

[7] The rule is different if the default judgment was entered as a sanction rather than because of failure to defend. *Corey*, 583 F.3d at 1252 ("when . . . the opposing party has already been subjected in an earlier proceeding to "oppression or harassment" that caused the court to declare a default on an issue, there is a compelling reason not to impose on that party again with respect to the same issue.")

-8-
Case 19-01008-t    Doc 19    Filed 12/13/19    Entered 12/13/19 16:11:39 Page 8 of 12

172 Cal. App. 2d at 586-87; *see also O'Brien v. Appling*, 133 Cal. App. 2d 40, 42 (1955); *Fitzgerald v. Herzer,* 78 Cal. App. 2d 127, 131-32 (1947); *In re Spilsbury*, 2011 WL 2471489, at *3 (Bankr. S.D. Cal.); *Flood v. Simpson*, 45 Cal. App. 3d 644, 651, n.12 (1975) (citing *Fitzgerald*); *State Farm Fire and Casualty Co. v. Edie (In re Edie)*, 314 B.R. 6, 12–13, n.16 (Bankr. D. Utah 2004); *cf. Four Star Electric, Inc. v. F & H Construction*, 7 Cal. App. 4th 1375, 1382 (1992) (if it was not necessary to decide an issue to enter a default judgment, there can be no preclusive effect), and *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1247 (9th Cir. 2001) (limiting "actually litigated" to instances where a court has determined the issues necessary to its judgment).[8]

    4.    <u>The Judgment is Not Entitled to Preclusive Effect</u>. For several reasons, the Court concludes that it should not give issue-preclusive effect to Plaintiff's judgment. First, the Court does not have a copy of the state court complaint, so it cannot tell which facts were necessarily determined. Second, the default judgment only contains one finding, i.e., that Debtor's "conducts [sic] were with "malice, oppression, or fraud." This finding is not nearly enough to prove every elements of a claim under §§ 523(a)(2), (a)(4), or (a)(6). Third, the Court holds that because Plaintiff seeks to enforce the domesticated New Mexico judgment rather than the original California judgment, she must abide by New Mexico's judgment enforcement rules. These rules include the rules about issue preclusion. Under New Mexico law, the Court may not give issue-preclusive effect to a default judgment.

Finally, issue preclusion "is not mandated in the Constitution or by statute. Rather, it is the product of court precedent based on a court's exercise of its equitable powers." *Acacia Villa v. U.S.*, 24 Cl. Ct. 445, 448 (Cl. Ct. 1991). Thus, "[e]ven when the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the discretion of the trial court." *U.S.*

---

[8] *See generally Moore*, 186 B.R. at 962 (discussing the issue and citing cases).

*v. Kaytso*, 868 F.2d 1020, 1022 (9th Cir. 1988); *see also Arapahoe County Public Airport Authority v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir. 2001) (citing *Acacia* and *Kaytso*). Because the judgment is a default judgment and the amount is so high, the Court determines that applying issue preclusion in this case would not be equitable. It therefore would exercise its discretion and decline to do so.

E.  Helpful Trial Evidence.

The current record is very sparse. At trial the Court will like to hear evidence on, inter alia:

- The historical relationship between the parties;
- Plaintiff's sophistication;
- How it happened that Plaintiff entered into an arrangement with Debtor to invest in second trust deeds;
- When the arrangement began;
- Whether there is any written evidence of the terms of the arrangement;
- What due diligence Debtor did on the four trust deeds Plaintiff bought;
- Whether the purchases were at a discount;
- The value of the houses at the time;
- The size of the first trust deeds;
- Whether the first or second trust deeds were in default;
- Whether the money paid to Debtor went to him personally or to one of his corporations;
- Whether the "corporate veil" needs to be addressed in this proceeding;
- Specifics about the breakdown in the relationship between the parties in the winter of 2015;
- Why Debtor thought it was within his rights to rescind the trust sales;
- What else, if anything, Debtor did to thwart Plaintiff's attempts to minimize her losses on her investments;
- Evidence of the amount spent paying the first deeds of trust and her foreclosure attorney;
- Whether there were buyers waiting for the houses when Debtor rescinded the trust sales;
- The current status of the ownership of the houses;
- Plaintiff's net, out-of-pocket losses;
- Whether Plaintiff claims that her emotional distress damages were for intentional or negligent infliction of the distress;
- Whether Plaintiff asserts that Debtor stole the houses or stole something else;
- Plaintiff's consequential damages, to the extent not covered above.

E.  Determining the Amount of Any Nondischargeable Judgment.

In general, the amount of any nondischargeable debt includes "all liability arising from" the debt, including "treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).[9] Put differently, "the non-dischargeable debt is the amount of damages arising from the non-dischargeable conduct." *Crespin*, 551 B.R. at 902. The Court will apply *Cohen* but Plaintiff should be aware that the nature of the default judgment she obtained may render *Cohen* of limited use to her. For example, if the Court were to find that some of Debtor's actions violated 11 U.S.C. § 523 but other conduct did not (although perhaps giving rise to a damages claim), how could the Court determine what portion of Plaintiff's $20+ million judgment is nondischargeable? That issue is for another day, but the parties should consider that even if Plaintiff prevails on her argument that some portion of the judgment debt is nondischargeable, it is not clear what portion that might be.

### III. CONCLUSION

Plaintiff's judgment against Debtor did not address the dischargeability of the judgment and is not entitled to issue preclusive effect. Without preclusion, Plaintiff's summary judgment motion must fail. The motion therefore will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 13, 2019

---

[9] While *Cohen* concerned nondischargeability under 11 U.S.C. § 523(a)(2), circuit courts have held that the analysis in *Cohen* applies to other subsections of § 523(a) as well. *See, e.g., Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, at *9 (10th Cir. BAP).

-11-
Case 19-01008-t    Doc 19    Filed 12/13/19    Entered 12/13/19 16:11:39 Page 11 of 12

Copies to: Counsel of record

David Tracy Giron
603 Camino De Lucia
Corrales, NM 87048