UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

DAVID TRACY GIRON,                  Case No. 18-13213 t7

    Debtor.

GRETCHEN WELCH,

    Plaintiff,

v.                                                      Adv. No. 19-1008

DAVID TRACY GIRON,

    Defendant.

## **OPINION**

The Court tried this adversary proceeding on August 18, 2020, to determine whether any portion of the debt Debtor owes Plaintiff, including the debt represented by an outrageous $20+ million default judgment, is nondischargeable. The Court concludes that Debtor's rescission of certain deed of trust sales in California willfully and maliciously injured Plaintiff's property rights. The resulting damages are nondischargeable. The balance of his debt to Plaintiff is dischargeable.

A.    <u>Facts</u>.

The Court finds:[1]

Gretchen Welch and David Giron are aunt and nephew. They have known each other Giron's whole life and used to be on very good terms.

---

[1] The Court takes judicial notice of its docket in this case and Case No. 30-2016-00845182-CU-OR-CJC, filed in the Superior Court of the State of California, Orange County. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

Ms. Welch has over a decade of experience "flipping" houses in the Albuquerque area. She testified that she successfully flipped dozens of houses between 2004 and 2016. She learned about buying, renovating, and reselling houses in part from her father and brother, who have experience in construction.

Mr. Giron is self-employed. He makes his living serving as a foreclosure trustee in California and in finding defaulted California junior deeds of trust for investors to buy (a practice known as "junior bene buyouts"). The general idea of a junior bene buyout is to pay relatively little for a second deed of trust, keep the first deed of trust current, foreclose the junior position, sell the house, and pocket the net proceeds after paying off the first trust deed. If all goes well, the investment can be profitable. Otherwise, the junior bene buyer loses money.

Unfortunately for both parties, in 2014 Giron convinced Welch to expand her house flipping business to include California junior bene buyouts. Between October and December 2014, Giron helped Welch purchase four defaulted junior trust deeds in southern California.[2] After buying the junior trust deeds, Welch appointed Giron as a successor trustee. Giron then went through the process of selling the houses via nonjudicial trust deed sale. In each case, Welch credit bid her junior lien position and took title to the house, subject to the first trust deeds.[3] There is no dispute that Welch paid Giron a total of about $48,000 as a fee for his services.[4]

---

[2] 3435 Linda Vista Court, Los Angeles; 20152 Orchid Street, Newport Beach; 11848 Cedarvale Street, Norwalk; and 1229 N. Bluegrass Street, Anaheim.

[3] The homeowners did not cooperate in the process. Once she took title, Welch had to hire counsel to evict the homeowners. If the homeowners filed for bankruptcy protection, Welch had to retain counsel to obtain stay relief.

[4] Perhaps because they were relatives and fairly close, Welch and Giron did not reduce their business agreement to writing. Had they spent a thousand dollars on a lawyer to draft a simple contract, they would have saved untold thousands of dollars in attorney fees and other costs, and would have avoided this extremely unfortunate and damaging dispute.

After taking title to and possession of the Los Angeles house, Welch discovered it had foundation problems.[5] She decided to cut her losses and allowed the first deed of trust lender to foreclose. She recouped about $8,000 in that sale, $3,000 less than she spent to acquire the second deed of trust. Added to the $11,000 she paid Giron for his work, Welch lost $14,000 on the Los Angeles house.

When Giron foreclosed on the Newport Beach property, he used a different business name on the trustee's deed of sale than he did in his prior foreclosure papers. Giron had to rescind the sale and start over, which delayed Welch and increased her "carrying costs" to flip the house.

The parties fell out over the Norwalk property. After Giron foreclosed on the second deed of trust and Welch bought the house, she evicted the occupants, spent $30,000 in renovations, and contracted to resell it in late 2015. When Giron got the payoff figure for the first deed of trust, he and Welch were surprised to find that the quoted payoff was about $32,000 higher than expected. This cost increase likely turned Norwalk from a money-maker to a money-loser. Welch was upset. The parties quarreled shortly after Thanksgiving in 2015. Giron demanded more money for his services.[6] Welch refused to pay him any more and told Giron to remove his belongings he had stored in her garage.

Angry at what he perceived to be his aunt's unfair treatment, Giron did a reprehensible thing: between December 8 and December 22, 2015, he recorded notices rescinding the foreclosure

---

[5] Among the risks of a junior bene buyout is that the buyer has little or no ability to inspect the house, making it very difficult to estimate repair costs accurately.

[6] The parties apparently never had a meeting of the minds about Giron's fee. Welch believed that she owed Giron a flat fee of $48,000 for his foreclosure services on the four houses, and also half of any net profit she realized from "flipping" the houses. Giron, on the other hand, thought his fee was half the difference between the face value of each junior deed of trust and Welch had to pay for it. In his mind, the $48,000 Welch paid was only about 50% of what she owed. The Court finds that Welch's position in this dispute was taken in good faith.

Case 19-01008-t    Doc 55    Filed 11/06/20    Entered 11/06/20 15:45:14 Page 3 of 12

sales of the Norwalk, Newport Beach, and Anaheim houses, due to alleged "invalid notice." The rescission notices had the effect of divesting Welch of title.

Fortunately, Giron's action had no effect on the Anaheim house. Welch was able to sell it on December 14, 2015, under a contract she had signed before Giron's wrongful act.[7] Welch ended up losing about $16,000 on the flip.

The rescission derailed Welch's sale of the Norwalk house, however, which had been scheduled to close about the time Giron filed his notice. Finding herself suddenly unable to deliver good title, Welch could not close the sale. Her buyers sued her for breach of contract, while the owners sued her for wrongful foreclosure. In a strange twist, Welch's realtor allowed the buyers move into the house, where they lived for several months. Welch ultimately sold the house to a different buyer in February 2017. Welch was fortunate that this disruption occurred when the real estate market was rising; the 2017 sales price was $45,000 higher than her 2015 contract price. Additionally, Welch was able to collect rent and settle with the realtor to help mitigate her losses.

It is difficult to say what effect the notice of rescission had on the Newport Beach property. There was no buyer under contract in December 2015, so Giron's notice did not disrupt a sale or, as far as the Court can tell, delay the ultimate sale. Nevertheless, Welch had to spend money to reforeclose and the owner of the house sued Welch over the notice of rescission, which delayed foreclosure. Welch finally sold the Newport Beach house in February 2017.

Welch sued Giron in state court in California, alleging breach of contract, fraud, breach of fiduciary duty, negligence, intentional infliction of emotional distress, and violation of California Penal Code § 496. On November 16, 2018, the California state court entered a default judgment for more than $20 million. Welch promptly domesticated the judgment in New Mexico and Giron

---

[7] Apparently no one caught the recorded notice of rescission before closing.

responded by filing this case. Welch then brought this proceeding, alleging that her judgment is nondischargable under §§ 523(a)(2)(A), (4), or (6).[8]

The Court previously ruled that Welch's default judgment established a valid debt but did not rule on dischargeability. *In re Giron*, 610 B.R. 670, 674–77 (Bankr. D.N.M. 2019).

B.     § 523(a)(2)(A).[9]

Welch's § 523(a)(2)(A) claim focused on actual fraud. "Actual fraud consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 Collier on Bankruptcy ¶ 523.08[1][e]; *see also In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. BAP 2001) ("When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud[.]"); *In re Vickery*, 488 B.R. 680, 690 (10th Cir. BAP 2013) (citing *Vitanovich*).

Welch argued that Giron committed actual fraud when he induced her to buy defaulted junior trust deeds and then abandoned her after filing the notices of rescission. Her argument fails. Welch's junior bene investments probably were ill-advised, but there is no evidence that they were fraudulent. Until the parties fell out over Giron's rightful fee, the investment program went more or less as anticipated.

Giron should not have filed the notices of rescission, but the notices did not defraud *Welch*, nor did they result in Giron obtaining any of her money or property. *See* § 523(a)(2); *cf. In re Bolles*, 593 B.R. 832, 843 (Bankr. D.N.M. 2018) (claims for money, property, services, or extension of credit obtained by fraud are governed by § 523(a)(2)(A), while claims for injury to

---

[8] All statutory references are to 11 U.S.C. unless otherwise indicated.
[9] Excepting from discharge debts obtained by false pretenses, a fraud representation, or actual fraud.

persons or property caused by fraud are governed by § 523(a)(6)). Similarly, Giron's wrongful act did not turn his prior, commercially reasonable business dealings into actual fraud *ex post facto*.

The Court understands why Welch connected the notices of rescission with fraud: the notices contained an untrue statement, i.e., that there was a problem with the notice of sale. That statement was false. Nevertheless, Welch's claim against Giron is for damages caused by his wrongful act, not for money Giron obtained by the act. Similarly, although Welch was hurt by the untrue statement, she was not deceived by it. The Court concludes that § 523(a)(2)(A) does not apply.

C.      § 523(a)(4).[10]

Giron acted as a foreclosure trustee for Welch. Did he have fiduciary duties to her? "The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law." *In re Young*, 91 F.3d 1367, 1371 (10th Cir. 1996). "However, state law is relevant to this inquiry." *Id.* Under California law, Giron did not owe fiduciary duties to Welch:

> '[T]he trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary.' [quoting *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 927 (2016).] The trustee's 'common' agency for both borrower and lender 'is a passive one, for the limited purpose of conducting a sale in the event of the trustor's default or reconveying the property upon satisfaction of the debt.' (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 819, 156 Cal.Rptr.3d 437, 300 P.3d 518 (*Biancalana*).) ''The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.'' (*Heritage Oaks Partners v. First American Title Ins. Co.* (2007) 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510 (*Heritage Oaks*), quoting *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287, 216 Cal. Rptr. 438, 702 P.2d 596; see also *Biancalana*, *supra*, at p. 819, 156 Cal.Rptr.3d 437, 300 P.3d 518 ['''The scope and nature of the trustee's duties are exclusively defined by the deed

---

[10] Excepting from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. "'Defalcation' refers to a failure to produce funds entrusted to a fiduciary. On this point, the case law has always been uniform." 4 Collier on Bankruptcy ¶ 523.10[1][b]. *See also* Black's Law Dictionary (10th ed.): Defalcation is "the fraudulent misappropriation of money held in trust."

> of trust and the governing statutes. No other common law duties exist."'].) The trustee's ''only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust.'' (*Heritage Oaks*, *supra*, at p. 345, 66 Cal.Rptr.3d 510.)

*Citrus El Dorado, LLC v. Chicago Title Co.*, 32 Cal App. 5th 943, 948. The Court concludes that for § 523(a)(4) purposes Giron did not have any fiduciary duties to Welch.

Furthermore, Giron did not defraud Welch (see above) or take any of her money that was entrusted to him. *See Young*, 91 F.3d at 1371, citing *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976). Welch does not claim that Giron embezzled her funds or committed larceny. Giron's improper actions hurt Welch but did not enrich him in any way. Indeed, Giron has paid and is paying a very high price for his vengeful acts. Welch's § 523(a)(4) claim fails.

D.  § 523(a)(6).[11]

"To succeed on a § 523(a)(6) action, a creditor must show by a preponderance of the evidence that: (1) he or his property sustained an injury; (2) the injury was caused by the debtor; (3) the debtor's actions were 'willful;' and (4) the debtor's actions were 'malicious.'" *In re Romero*, 618 B.R. 526, 532 (Bankr. D.N.M. 2020) (citing *Bolles*, 593 B.R. at 843 and *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012)). Section 523(a)(6) generally relates to tortious conduct, but "[i]njuries covered by the section 523(a)(6) discharge exception are not confined to physical damage or destruction; an injury to intangible personal or property rights is sufficient." 4 Collier on Bankruptcy ¶ 523.12[4]. For an action to have been committed willfully, "a debtor must have intended both the act and the resulting harm." *Bolles*, 593 B.R. at 843; *see Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Englehart*, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of

---
[11] Excepts from discharge debts for willful and malicious injury to the creditor or her property.

mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). An action is malicious when it is "intentional, wrongful, and done without justification or excuse." *Bolles*, 593 B.R. at 843 (citing *Deerman*, 482 B.R. at 369)).

Giron's rescissions of the trustee sales damaged Welch, divesting her of her recently acquired title. Consequently, Welch breached her contract to sell the Norwalk house and became embroiled in litigation involving both the Norwalk and Newport Beach houses.

Giron testified that he rescinded the sales because Welch refused to pay him what he believed he was owed. He had no legal justification for doing so. The only reason for Giron's actions was to injure Welch. Willfulness is not in serious dispute.

The Court also finds that Giron's action, taken for the specific purpose of exacting revenge and hurting Welch, were malicious. The parties had a good faith dispute about what Welch owed Giron, if anything. Giron had every right to sue Welch for breach of contract if he thought she defaulted on her obligations, but no right to file the notices of rescission. His malice in doing so is as clear as if he had decided to punish Welch by bashing out her car windows with a baseball bat.

Damages arising from Giron's filing the notices of rescission are nondischargeable under § 523(a)(6).

A. <u>Damages</u>.

"In general, the amount of any nondischargeable debt includes 'all liability arising from' the debt …. Put differently, 'the nondischargeable debt is the amount of damages arising from the non-dischargeable conduct.'" *Giron*, 610 B.R. at 678 (quoting *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998), and *In re Crespin*, 551 B.R. 886, 902 (Bankr. D.N.M. 2016)).

The Court previously denied Welch's motion for summary judgment that her entire $20+ million judgment was nondischargeable. The trial evidence shows the soundness of this decision.

Not only did the state court not address willful and malicious injury, the claim was never asserted. Instead, the state court default judgment awards unbelievably lavish damages for claims that have no basis in fact. As one example, the judgment includes almost $8,600,000 for damages and attorney fees awarded under California Penal Code § 496, which makes it a crime to receive stolen property.[12] Giron never received stolen property. He obtained nothing "in any manner constituting theft or extortion." *Id.* Likewise, almost every other category of damages in the default judgment is wildly inflated or wholly inappropriate. In New Mexico, an attorney could get into trouble if he presented such a document to a judge. It gives the judicial process the appearance of being totally unfair. A defendant should never allow a plaintiff to take a default judgment against him, but doing so is not a license to steal.[13]

Based on the Court's ruling at the summary judgment stage, at trial Welch asked the Court, as an alternative to declaring the entire default judgment nondischargeable, to make an independent award of damages upon a finding of nondischargeable conduct. Giron did not object. The Court finds that this is a reasonable request and will treat the issue as if raised in the pleadings. *See* Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15(b)(2).

The Court makes the following findings about damages:

1. <u>Los Angeles House</u>. No damages. Welch gave up this house as a bad deal before her falling out with Giron. Giron's December 2015 actions had no effect on this property.

---

[12] The code section specifies a sentencing range for "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained". In Welch's state court complaint against Giron, this section was misidentified as "Obtaining Title to Real Property and Money by False Pretenses."

[13] The Court does not blame Welch for this default judgment. The blame must be laid at the feet of her California counsel.

2. <u>Anaheim House</u>. No damages. Welch was able to sell the Anaheim house as contracted despite Giron's notice of rescission, so she did not suffer any harm.

3. <u>Norwalk House</u>. No net damages. The Court calculates the net damages as follows:

| Losses | Gains | Net |
|---|---|---|
| Cost to reinstate first deed of trust: $83,855.80 | Difference in net proceeds between anticipated sale in 2015 and actual sale in 2017: $87,589.32 (combination of market appreciation and decrease in payoff balance) | |
| Additional renovation expenses: $10,032.24 | Net recovery from Keller Williams: $35,000 | |
| Defend suit by buyer: $10,000 | Rent: $16,000 | |
| Defend suit by owner: $10,000 | | |
| Cost to reforeclose: $4,519.46 | | |
| Add'l insurance: $987.70 | | |
| Add'l utilities: $585.73 | | |
| Add'l attorney fees due to rescission: $345 | | |
| **Total: $120,325.93** | **Total $138,589.32** | **+$18,263.39** |

Thus, Welch did not prove that she suffered a loss on the Norwalk house because of Giron's actions.

4. <u>Newport Beach House</u>. Actual damages of $18,699.01, which consists of $112.50 in attorney fees advising Welch about the rescissions, $8,586.51 to reforeclose, and $10,000 to defend litigation brought by the owner because of the notice of rescission. There may have been other damages, e.g., other attorney fees, delay damages, or lost-profit damages, but Welch's evidence of those damages was insufficient.

5. <u>Punitive Damages</u>. Because Giron maliciously hurt Welch, knowing she was powerless to stop him, an award of punitive damages is appropriate. *See Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1211 (D.N.M. 2007) ("To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a

willful, wanton, malicious, reckless, oppressive, or fraudulent level.") (quoting *Eckhardt v. Charter Hospital of Albuquerque, Inc.*, 124 N.M. 549, 562 (Ct. App. 1997); *Bolles*, 593 B.R. at 842 (citing *Gibson*). Giron's conduct satisfies that standard, and the Court finds that a punitive damage award of $25,000 (about 133% of actual damages), is reasonable and conservative. Conduct such as Giron's must be deterred and punished.

6. <u>Attorney Fees</u>. Absent a statutory or contract provision to the contrary, attorney fees incurred to get a judgment against a debtor are not recoverable by the creditor and therefore cannot form part of a nondischargeability judgment. *See, e.g., In re Patel*, 536 B.R. 1, 22–23 (Bankr. D.N.M. 2015); *In re Atchison*, 255 B.R. 790, 793 (Bankr. M.D. Fla. 2000) ("plaintiff has failed to establish any independent contractual or statutory basis for an award of attorney's fees in this proceeding"); *In re Silva*, 125 B.R. 28, 30 (Bankr. C.D. Cal. 1991) ("No statutory basis in the Code provides generally for attorney's fees for a prevailing creditor in a § 523 action….Without a statutory right to collect attorney's fees, the creditor must have an independent right on which to base an award of attorney's fees."); *see generally Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 124–27 (2015) (discussing the American Rule that parties usually must pay their own fees). Welch's state court default judgment includes fees awarded under California Penal Code § 496(c), but as Giron did not extort Welch or steal any of her property, the award cannot be any part of a nondischargeability judgment. Welch did not present any other grounds for fee shifting.

However, the Court does think it appropriate to award Welch the $18,699.01 it cost her to reforeclose the Newport Beach house and defend against the lawsuits prompted by Giron's notice of rescission. These fees and costs were not incurred to obtain a judgment against Giron but to minimize or eliminate the damages Giron caused by his tortious conduct.

E.  Conclusion.

Giron did not defraud Welch or defalcate, embezzle, or steal any of her funds or other property. When he got in a fight with her over money, however, Giron willfully and maliciously injured her property rights, causing at least $18,699.01 in damages. Adding that amount to $25,000 in punitive damages, the Court will enter a final judgment against Giron for $43,699.01, which is nondischargeable under § 523(a)(6). The balance of Giron's debt to Welch is discharged.

                                                                                                      Hon. David T. Thuma
                                                                                                      United States Bankruptcy Judge

Entered: November 6, 2020

Copies to: Counsel of record

David Tracy Giron
603 Camino De Lucia
Corrales, NM 87048